## HANTZOPOULOS v. UNITED STATES.

District Court, M. D. North Carolina; at Greensboro.   June 7, 1927.

Aliens ⚖➙62(3)—Alien's absence of more than one year of five-year period before petition because of sickness did not preclude naturalization (Act June 26, 1848 [9 Stat. 240]; Comp. St. § 4360).

Alien's temporary absence from United States of more than one year of five-year period immediately preceding date of petition, caused by sickness of himself and wife, during all of which time it was his intention to maintain permanent residence within United States, and to return and make it his permanent residence, *held* not to preclude naturalization, in view of Act June 26, 1848 (9 Stat. 240), which repealed provision of Act March 3, 1813, § 12 (Comp. St. § 4360), requiring continued presence, showing that Congress did not contemplate alien must be actually present throughout five-year period.

Petition for naturalization by Dimitrious Hantzopoulos. Petition granted.

J. E. Alexander, of Winston-Salem, N. C., for petitioner.

HAYES, District Judge. The petitioner had a preliminary hearing upon his petition for naturalization before Hon. Jesse Thomas,

who was appointed to conduct the hearing and to make findings and recommendations thereon. He examined the petitioner and his required witnesses and recommended that the petition be denied, because the petitioner was absent from the United States for more than one year of the five-year period immediately preceding the date of his petition.

From the evidence offered at the preliminary hearing, and the additional evidence produced in open court, I find the following facts:

(1) The petitioner landed in the United States on December 27, 1919, and located at Winston-Salem, N. C. He came to the United States with the intention of making this his permanent residence, and he left his wife and children in Greece.

(2) On September 9, 1924, he went back to Greece for a visit to recoup his health, having been advised so to do by Dr. Craig, a native citizen of Winston-Salem, N. C., and a man of good repute. The petitioner had formed a partnership with George D. Gallins, and was conducting a café business at Winston-Salem. He left his investment here, and had an agreement with his partner that he was going away temporarily, and would return as soon as his health permitted. When he left America he declared Winston-Salem as his residence, and was granted permission to return by the Immigration Bureau.

(3) While he was in Greece, his wife became sick, and he tarried there longer than he had intended. He consulted the American consul at Athens, to obtain permission to remain until his wife recovered sufficient health to leave her bed, but was advised by the consul that he must return immediately to America or forfeit his right to become a citizen. Thereupon he sailed immediately for America, leaving his wife sick and confined to her bed, and landed in the United States October 21, 1925, and has actually been present in the United States ever since that time.

(4) The petitioner established his permanent residence here when he landed and located in Winston-Salem, N. C., in 1919.

(5) His absence from the United States from September 9, 1924, to October 21, 1925, was temporary and caused by sickness of himself and his wife, and during all of this time it was his intention to have and to keep Winston-Salem, N. C., as his permanent residence. It was his intention at all times during said absence to return to Winston-Salem and to make it his permanent residence.

(6) The petitioner has in all other respects established proof as required by law of his right to become a naturalized citizen of the United States.

Upon the foregoing findings of fact, the petitioner is unquestionably entitled to the relief prayed for, and the petition is granted. If Congress had intended to require aliens to reside in the United States continuously for a period of five years preceding the application, and by this provision had intended to require such aliens to be actually present in the United States continuously during the period, it would have said so. The Congress is composed of men of judgment and experience. They are elected by the people. They are familiar with the general meaning of residence as defined by the courts of the several states. They know that all the courts hold actual presence is not necessary to prove residence. Moreover, under the act of 1813 (2 Stat. 811, § 12 [Comp. St. § 4360]) continued presence was required. This provision was repealed in 1848. 9 Stat. 240. This clearly shows that Congress did not contemplate that an alien must actually be present continuously throughout the five-year period in order to become a citizen.

No one would seriously question the right of an alien to establish his five-year residence if he should be called home temporarily on account of the serious illness of some member of his family, and when he was absent only for a few weeks and had the intention all the time to return to the United States. It therefore follows that he has not deprived himself of his right to be a citizen of this country, when his absence is prolonged by circumstances over which he had no control. The very fact that he left his wife sick and confined to her bed rather than to forfeit his right to be a citizen of the United States is proof sufficient of his bona fide intention, and it would be inhuman now to deprive him of the right after he had made that sacrifice.

My ruling is sustained by the opinion of Circuit Judge Hand, in Neuberger v. U. S., 13 F.(2d) 541, and by the extended discussion of the subject in Reynolds v. Cotton Mills, 177 N. C. 412, 99 S. E. 240, 5 A. L. R. 284.